THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff*, V. EDWARD E. SAPP, as Judge of the District Court of Cherokee County, etc., *Defendant.*

No. 18,010.

### SYLLABUS BY THE COURT.

1. CRIMINAL LAW — *Conviction — Duty of Court — Sentence.* Whenever a verdict or plea of guilty has become final, the court is under an absolute duty to pronounce sentence, and has no discretion, as a disciplinary measure, to suspend it.

2. —— *Guilty — Suspension of Sentence — Jurisdiction Lost.* Where after a verdict or plea of guilty the defendant is permitted to go at large under an arrangement that he shall escape punishment unless the court shall in the future determine to impose a sentence, the jurisdiction of the case is lost with the expiration of the term, and no valid sentence can thereafter be pronounced.

3. —— *Same.* The rule stated applies notwithstanding the sentence purports to be suspended until a certain date, for the purpose of retaining control of the defendant, who is ordered to appear at that time and show that he has not violated the law in the interval.

Original proceeding in mandamus. Opinion filed July 6, 1912. Writ denied.

*John S. Dawson*, attorney-general, for the plaintiff.
*A. S. Wilson*, of Galena, for the defendant.

The opinion of the court was delivered by

MASON, J.: On December 11, 1911, in the district court of Cherokee county, sitting at Columbus, a number of defendants pleaded guilty to violations of. the law relating to the sale of intoxicating liquors. They have not been sentenced. On December 30, the attorney-general applied to this court for a writ of mandamus requiring sentence to be pronounced. An answer to the application has been filed and the case is submitted upon a motion of the state for judgment upon the pleadings. The answer sets out among other matters that the defendants had pleaded guilty under an arrangement that their sentences were to be suspended and that they were to pay the costs; that "such sentences were suspended until the first day of the May term, 1912, for the purpose of retaining control of those defendants, and requiring them to report and show their good faith in the matter"; that the defendants were required to appear at that time and show to the satisfaction of the court that they had not violated the law in the interval; that they were allowed various periods, ranging from thirty to ninety days, to pay the costs; that the term of court ended December 16.

Two principal contentions are made against the allowance of the writ: (1) that the court had discretion to make the order suspending sentence; and (2) that if not, then jurisdiction of the cases has been lost and no sentence can now be pronounced.

A court may postpone the rendition of judgment in a criminal case, and has a practically unlimited discretion in that regard, so long as the imposition of a sentence as a matter of course at some time remains in contemplation. As to this there is no conflict in the authorities. There is a difference of judicial opinion, however, as to whether a court may withhold sentence with the understanding that it may never be pronounced at all. The cases on the subject are fully

collected in a note in 33 L. R. A., n. s., 112, introduced by this paragraph:

"It may be stated generally that a court has power temporarily to suspend sentence in order to afford time for motions for new trials, appeals, etc., and to inform itself as to sentence to be pronounced. A conflict, however, exists as to the power of courts to suspend sentence indefinitely, some decisions holding such a suspension to be an infringement upon the executive power to reprieve and pardon."

Other recent notes on the subject are to be found in 132 Am. St. Rep. 644; 25 Harvard Law Review, 739; and 12 Columbia Law Review, 543.

We think the better rule is that where a verdict or plea of guilty has become final the court has no discretion, as a disciplinary measure, to suspend the imposition of sentence, but is under an absolute duty to pronounce it, and this duty is violated whenever an order is made the purpose and natural effect of which is that the defendant shall understand that he may never be punished. There is an obvious and important difference between the mere delay to pronounce sentence and its suspension, in the sense in which the expression is here used. Whether a postponement is rightful depends not upon its length or definiteness, nor upon whether it extends beyond the term, but upon its purpose and character. Whenever prior to judgment the defendant is permitted to go at large with the understanding that (although the verdict or plea of guilty is to stand) he may escape punishment altogether, and that his subsequent conduct may effect the matter, the court is really exercising a power of parole which does not belong to it except as conferred by statute. In the present case it is clear that the defendants were in effect given a discharge during good behavior. Obviously the understanding was that they were not to be punished for their past misconduct unless they misbehaved in the future. The entering into

The State, *ex rel.*, v. Sapp.

such an arrangement was not within the scope of the court's duties.

A more difficult question is whether the order made by the court resulted in a loss of jurisdiction with the expiration of the December term of court, when it could no longer be vacated. In jurisdictions where the right of the court to suspend sentence is denied it is generally held that when the defendant is set at liberty upon an indefinite suspension he can not be further proceeded against, and if rearrested is entitled to be discharged. (See notes already cited; also, 19 Encyc. Pl. & Pr. 448; 12 Cyc. 773, note 41; 25 A. & E. Encycl. of L. 314; the following cases bear directly upon this phase of the .matter: *Gray v. The State,* 107 Ind. 177, 8 N. E. 16; *Commonwealth v. Maloney,* 145 Mass. 205, 13 N. E. 482; *Weaver v. People,* 33 Mich. 296; *Grundel v. The People,* 33 Colo. 191, 79 Pac. 1022, 108 Am. St. Rep. 75; *In the Matter of Flint,* 25 Utah, 338, 71 Pac. 531, 95 Am. St. Rep. 853; *The People v. Allen,* 155 Ill. 61, 39 N. E. 568, 41 L. R. A. 477; *State v. Hockett,* 129 Mo. App. 639, 108 S. W. 599.) The principle upon which these cases turn was applied in *In re Beck,* 63 Kan. 57, 64 Pac. 971. There, after a conviction upon several counts, the defendant was sentenced upon but one. Later an attempt was made to sentence him upon the other counts, but he was discharged upon habeas corpus, the court saying:

"It was competent for the court temporarily to suspend judgment for the purpose of hearing motions for a new trial and in arrest of judgment, also to gain information that would enable the court to impose a just sentence on the defendant, to give the defendant an opportunity to perfect an appeal, or for other proper relief; but an indefinite suspension, or the holding of the sentence over the head of the defendant, to be executed from time to time as the court may see fit,. is wholly unauthorized." (p. 59.)

The principle is substantially the same as that which forbids a discretionary stay of execution of a sentence

after it has been pronounced. (*In re Strickler, Petitioner,* 51 Kan. 700, 702, 33 Pac. 620; *Ex parte Clendenning,* 22 Okla. 108, 97 Pac. 650, annotated in 19 L. R. A., n. s., 1041; *In re Peterson,* 19 Idaho, 433, 113 Pac. 729.)

In many of the cases the action of the court which results in a loss of jurisdiction is described as the indefinite postponement of a sentence. As already indicated, we think the important consideration in this connection is the purpose of the postponement. The mere omission to pronounce sentence, even though several terms pass without an order of continuance or any other action, might not amount to a suspension of sentence, in the sense here intended, if it were occasioned, for instance, by a doubt as to whether a verdict should be set aside, or as to what punishment ought to be assessed. On the other hand, the fact that in the present case the order purported to suspend the sentences until a definite time does not prevent a loss of jurisdiction. A mere postponement of sentence until that time would of course not have devested the court of jurisdiction. But the defendants were ordered to appear at the May term, not that they might receive sentence, but that they might report and show their good faith in the matter, and their good conduct in the interval. The purpose was expressed to retain control of them—clearly in order to influence their conduct, perhaps in part with regard to the payment of costs. If this order were valid its effect could have been indefinitely extended by additional orders of the same character. It was in substance an attempt to grant a parole, in a manner different from that authorized by statute. It might have been vacated prior to the final adjournment of the court, but with the lapse of the term all control over the defendants ceased. The reason of the rule applied is that the defendant ought not, in the absence of a statute permitting it, to be held in fear of punishment which may or may

not be inflicted at the pleasure of those in authority. The rule being for the protection of the defendant a doubt may exist whether anyone else should be permitted to invoke it. But there could be no purpose in granting a writ requiring a sentence to be pronounced which would be .held void if attacked by the person against whom it runs.

The writ is denied.